Case 3:22-cv-00143   Document 30   Filed on 07/05/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
July 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIMBERLY YATES, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00143 |
| | § | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Defendant Experian Information Solutions, Inc. ("Experian") has filed a Motion to Compel Arbitration and Stay Proceedings Pending Arbitration ("Motion to Compel Arbitration"). Dkt. 25. Having reviewed the briefing, the record, and the applicable law, I recommend that the Motion to Compel Arbitration be **GRANTED**.

## BACKGROUND

Plaintiff Kimberly Yates ("Yates") has filed suit against Experian, alleging that Experian failed to comply with its obligations under the Fair Credit Reporting Act because debts and personal information belonging to her brother allegedly appeared on her credit report. As a direct result of Experian's actions, Yates contends that she has suffered "actual damages including but not limited to: decreased creditworthiness, credit approval at less favorable rates, sleepless[ness], wasted time, emotional distress including stress, anxiety, frustration, and other damages continuing in nature." Dkt. 1 at 13–14.

Before addressing the merits of Yates's allegations, Experian argues that her claims are subject to arbitration because she previously entered into an agreement to arbitrate credit-reporting disputes such as this one. It is undisputed that in February 2022, Yates signed up for CreditWorks, a free online credit monitoring

product provided by Experian's affiliate, ConsumerInfo.com, Inc. d/b/a Experian Consumer Services ("ECS"). Experian and ECS are both wholly owned subsidiaries of Experian Holdings, Inc. When Yates enrolled in CreditWorks, she agreed to abide by a Terms of Use Agreement. That contract contains an arbitration provision that requires Yates and ECS—which is defined to include Experian[1]—to arbitrate all

> claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

Dkt. 25-2 at 7.

Yates concedes that there is a valid agreement to arbitrate in place, but vehemently denies that the present dispute is covered by that arbitration agreement. According to Yates, the arbitration clause only covers claims directly related to the services provided by ECS and the use of its website. Because the inaccurate reporting claims she advances in this lawsuit do not originate from any service provided by ECS or the use of its website, Yates argues that her claims do not fall within the scope of the arbitration agreement. Separately, Yates maintains that even if her claims fell within the arbitration clause, Experian waived its right

---

[1] The arbitration agreement provides, in relevant part, as follows:

> For purposes of this Agreement, the terms 'we,' 'us' or 'ECS' refer to ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services), and referred to as 'Experian' on the Websites, its predecessors in interest, successors and assigns, affiliates, and any of its third party service providers (including, without limitation, cloud service providers) who ECS uses in connection with the provision of the Services to you.

Dkt. 25-2 at 2.

to compel arbitration by "acting inconsistently with its purported right to arbitrate." Dkt. 27 at 5.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. § 2). The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Given the strong federal policy favoring arbitration, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## ANALYSIS

### A. ARBITRABILITY

As an initial matter, I must determine who should decide whether the claims set forth in the Complaint are arbitrable—a federal judge or an arbitrator. "Ordinarily, whether a claim is subject to arbitration is a question for a court. However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions—such as whether a particular claim is subject to arbitration—are for the arbitrator, and not a court, to decide." *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (citation omitted); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability

question that the parties have delegated to an arbitrator."); *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (recognizing that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

A contractual provision that "transfer[s] the court's power to decide arbitrability questions to the arbitrator" is known as a "delegation clause." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). "Delegation clauses are enforceable" and require the district "court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id*. Where a party asserts that an arbitration agreement contains a delegation clause, the district court's analysis is limited to two inquiries: "(1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna v. Int'l Bank of Com.*, 839 F.3d 373, 378 (5th Cir. 2016).

Applying this two-prong test here, I first look to see whether there is a valid agreement to arbitrate some set of claims. This is easy. As noted above, the Terms of Use Agreement contains a clear and unmistakable arbitration provision. Nobody contests that. The first prong is satisfied.

Turning to the second prong, I must determine whether the Terms of Use Agreement contains a valid delegation clause. This is also cut and dry. The arbitration clause at issue expressly provides:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

Dkt. 25-3 at 7. Needless to say, this is "clear and unmistakable evidence" that the parties intended for an arbitrator to decide whether the particular claims at issue

4

fall within the scope of the contract's arbitration clause. *Henry Schein*, 139 S. Ct. at 530 (quotation omitted).

My analysis, however, does not stop there. The arbitration provision at issue further provides that the AAA Rules will govern the arbitration proceeding. *See* Dkt. 25-3 at 7 ("The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement, and will be administered by the AAA."). Because the AAA Rules specifically provide that the arbitrator has the authority to determine whether claims are arbitrable, "[t]he express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). Whether the instant claims are arbitrable thus appears to be "plainly the right and responsibility only of the arbitrator." *Kubala*, 830 F.3d at 204.

In sum, the existence of a valid delegation clause means that I must defer to the arbitrator to decide the gateway issue of arbitrability. *See Reyna*, 839 F.3d at 379 ("Because the arbitration agreement contains a delegation clause, any disputes about the arbitrability of [plaintiff]'s claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts"); *Kubala*, 830 F.3d at 202 n.1 ("So long as there is a plausible argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." (quotation omitted)). It would be improper for this Court to usurp the arbitrator's role of determining whether the particular claims raised in this litigation fall within the ambit of the Terms of Use Agreement's arbitration clause.

**B.     WAIVER**

Yates next argues that Experian has "waived its right to compel arbitration by waiting four months after receiving notice of Plaintiff's lawsuit to file the immediate Motion to Compel Arbitration." Dkt. 27 at 2. I am not persuaded.[2]

Like any contractual right, the right to arbitrate may be waived. *See Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) ("The right to arbitrate a dispute, like all contract rights, is subject to waiver."). A party waives its right to arbitrate "by substantially invoking the judicial process." *Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (cleaned up).[3] "Substantial invocation [of the judicial process] occurs when a party performs an overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Int'l Energy Ventures Mgmt.*, 999 F.3d at 266 (cleaned up). "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004); *see also Nicholas*, 565 F.3d at 907 ("[W]aiver of arbitration is a disfavored finding.").

For the waiver analysis, the relevant timeline in this case is undisputed: Experian was served with the lawsuit on May 8, 2022. After receiving a short extension to respond to the lawsuit, Experian filed an answer on June 15, 2022.

---

[2] Even where an arbitration agreement delegates the arbitrability decision to an arbitrator, the district court retains the right to determine whether the right to arbitrate has been waived. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 263–64 (5th Cir. 2021).

[3] "Our circuit's test for waiver has also included a prejudice requirement: a party's substantial invocation of the judicial process was also required to inflict prejudice or detriment upon the opposing party." *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022) (citing *Forby*, 13 F.4th at 465). Yet, the Supreme Court has since held that courts are "wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–13 (2022). "In the absence of any intervening Fifth Circuit authority dictating otherwise, . . . the surviving test for waiver in this circuit is the remainder of Fifth Circuit's prior test: whether the party has substantially invoked the judicial process." *Vollmering*, 2022 WL 6246881, at *12.

Roughly two weeks later, on June 30, 2022, Experian filed an Amended Answer. In that pleading, Experian argued, for the first time, that Yates's claims were subject to arbitration. Still, Experian did not immediately file a motion to compel arbitration. Although Experian's counsel repeatedly told Yates's counsel that the company intended to seek arbitration, Experian waited until September 1, 2022 to file its Motion to Compel Arbitration. By failing to file its Motion to Compel Arbitration until four months into the litigation, Yates argues, Experian has waived its right to arbitrate.

Yates's position lacks any legal support. To begin, I note that Yates has failed to identify any "overt act" by Experian "that evinces a desire" to resolve this dispute through litigation as opposed to arbitration. *Int'l Energy Ventures Mgmt.*, 999 F.3d at 266. That should end the waiver inquiry right away. Experian did not assert any claims for affirmative relief against Yates in federal court. Experian also did not pursue any discovery against Yates in federal court. All Experian has done at the district court level in connection with this matter is file an answer, amend that answer two weeks later to assert that Yates's claims should be arbitrated, and then move to compel arbitration roughly four months into the case. Suffice it to say that Experian's actions in federal court can hardly be characterized as a substantial invocation of the judicial process.

There are two Fifth Circuit decisions that are dispositive of the waiver argument Yates advances. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416 (5th Cir. 1985).

In *Walker*, the plaintiffs alleged various state securities law violations. *See* 938 F.2d at 576. The defendant served the plaintiffs with interrogatories and requests for production, and also filed an answer to the lawsuit. *See id*. Thirteen months after suit was filed, the defendant filed a motion to compel arbitration and to stay proceedings. *See id*. In response, the plaintiffs argued that the defendant had waived its right to arbitrate. *See id*. The Fifth Circuit disagreed, holding that even though the defendant waited 13 months after suit was filed to request

7

arbitration, participated in limited discovery, and answered the complaint, the defendant's actions in federal court "were not so substantial as to . . . overcome the legal presumption that parties who contracted for arbitration should be allowed to arbitrate." *Id.* at 578.

In *Tenneco*, the defendants in a breach of contract action waited to compel arbitration until eight months after they had been served with the plaintiffs' lawsuit. *See Tenneco*, 770 F.2d at 420. During those eight months, the defendants filed an answer, served interrogatories and requests for production, and moved for a protective order. *See id.* Even though the defendants had actively participated in the federal court proceedings, the Fifth Circuit found that the defendants had not waived their right to seek resolution in an arbitral forum:

> While it is true that [the defendant] waited almost eight months before moving that the district court proceedings be stayed pending arbitration, and, in the meantime, participated in discovery, this and other courts have allowed such actions as well as considerably more activity without finding that a party has waived a contractual right to arbitrate.

*See id.* at 420–21.

From virtually the outset of this litigation, Experian put Yates on notice as to its desire to arbitrate this matter. Merely waiting four months to file a motion to compel arbitration is not enough, by itself, to establish that Experian has waived its right to arbitration. *See Ryan v. Thunder Restorations, Inc.*, No. CIV.A. 09-3261, 2011 WL 2680482, at *6 (E.D. La. July 8, 2011) ("[I]n light of the Fifth Circuit's tolerance for delays up to thirteen months, [the defendant's] delay of four months from the time [the lawsuit was served on defendant until the filing of a motion to compel arbitration] is negligible.").

## CONCLUSION

For the reasons discussed above, I recommend that the Motion to Compel Arbitration (Dkt. 25) be **GRANTED**. Fifth Circuit precedent leaves the decision on whether to stay or dismiss a case when compelling arbitration to the broad

8

discretion of the district court. *See Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 311 (5th Cir. 2003). Because the arbitrator will initially be required to determine whether Yates's claims are arbitrable, I think the best course of action is to simply stay and administratively close this matter for the time being. In the event the arbitrator decides that the claims identified in the Complaint are not arbitrable, the parties can seek to lift the stay and this case will proceed to judgment. If the arbitrator finds that the claims are arbitrable, the Court can always confirm an arbitration award once the arbitration concludes.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 5th day of July 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE